IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| GARTH ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 5:15-CV-475 (MTT) |
| | ) |
| AMERICAN FAMILY INSURANCE | ) |
| COMPANY and AMERICAN FAMILY | ) |
| MUTUAL INSURANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER

Defendants American Family Insurance Company ("AFIC") and American Family Mutual Insurance Company ("AmFam Mutual") have moved to dismiss Plaintiff Garth Anderson's claims against them for breach of contract and declaratory judgment pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 8).  The motion is **GRANTED in part and DENIED in part**.

### I.    BACKGROUND[1]

Plaintiff Garth Anderson seeks relief on behalf of himself and others similarly situated for the Defendants' alleged refusal to assess and pay damages for diminished value when claims are made under their homeowners insurance policies.  Anderson alleges he "timely reported a claim for direct physical loss to his home resulting from water damage" but "Defendants breached their insurance contract with [him] by (1) failing to assess [his] property for diminution in value resulting from the water damage and (2) failing to pay [him] for such diminution in value."  (Doc. 1 ¶¶ 2, 37).  Specifically, Anderson alleges AFIC "adjusted [his] claim arising out of the loss, authorized repairs to

---

[1] The facts are taken from the allegations in the complaint (Doc. 1) and accepted as true for purposes of this motion.

[his] home [which he made], and subsequently paid certain repair costs," but "took no action to assess any diminution in the fair market value of [his] property." (*Id.* ¶¶ 38-39).

Anderson's policy covers "sudden and accidental direct physical loss to" dwellings for which AFIC "will pay the cost to repair or replace the damaged part of [dwellings]." (Doc. 8-1 at 18, 20, 27). Anderson chose to repair the damage, triggering the loss settlement provision in the policy which provides that AFIC "will pay the lesser of the limit shown in the Declarations or the amount [Anderson] actually and necessarily spent to repair or replace the damaged portion of the property with materials of like construction." (*Id.* at 27). The policy also includes an appraisal clause which provides that if AFIC and Anderson "fail to agree on the amount of damages as the result of a covered loss, either may demand that the amount of the loss be set by appraisal." (*Id.* at 25).

Although Anderson refers to AFIC and AmFam Mutual collectively as "AmFam" in many of his allegations, the policy was issued by AFIC. (Doc. 8-1 at 15). Anderson invokes several theories to hold AmFam Mutual liable: privity of contract, the juridical link doctrine, and alter ego, agency, and/or joint venture. (Doc. 1 ¶¶ 21-24). The allegations relating to these theories are:

11. [AFIC] is a subsidiary, or otherwise an affiliated entity, of AmFam Mutual.

12. Defendants have a common administrative or principal place of business located at 6000 American Parkway, Madison, Wisconsin 53783.

13. Defendants share and have in common several officers and directors, including but not limited to, Jack Charles Salzwedel, Daniel James Kelly,

David Clifford Holman, and Daniel R. Schultz, who signed [Anderson's] policy declarations page.

14. Defendants coordinate and commingle financial and other resources by making financial transactions between each other, by issuing consolidated financial statements, and by other means.

15. Defendants operate and trade under the common name of AmFam as part of the American Family Insurance Group and use the same logo to identify and promote their business.

16. Defendants maintain a common website, www.amfam.com, through which AmFam insureds can report claims under their homeowners policies.  AmFam also offers 24-hour service to insureds who call 1-800-MYAMFAM to report a claim.

17. AmFam's personal lines products, including homeowners insurance, are underwritten by AmFam Mutual and [AFIC].

18. Correspondence from AmFam following the submission of [Anderson's] claim at issue in this action indicates that [Anderson's] homeowners policy was with AmFam Mutual.  Upon information and belief, AmFam Mutual was involved in the adjustment of [Anderson's] claim.

19. [Anderson's] policy declarations page is signed by Daniel R. Schultz, the current or former president of AmFam Mutual.

20. Upon information and belief, the homeowners insurance policies issued by [AFIC] and AmFam Mutual in Georgia, including Goldstar Homeowners policies such as [Anderson's], are the same or substantially

similar in all respects material to this action and Defendants engaged in a

common course of conduct with respect to those policies in terms of their

failure to assess for and, where found, pay diminished value to their

insureds.

21. Upon information and belief, at all relevant times herein, Defendants

acted in all aspects as agent, apparent agent, and alter ego for each

other, with respect to the acts complained of herein.

22. Upon information and belief, at all relevant times herein, Defendants

were engaged in a joint venture with each other.

23. Defendants' actions are sufficient to find that there is an amalgamation

of the Defendants.

24. Defendants' actions and relationship are sufficient to find that there is

a juridical link between them.

(*Id.* ¶¶ 11-24).

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

The Federal Rules of Civil Procedure require that a pleading contain a "short and

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

P. 8(a)(2).  To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must

contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are

accepted as true, and the reasonable inferences therefrom are construed in the light

most favorable to the plaintiff."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261

(11th Cir. 2006) (internal quotation marks and citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### B.    AFIC

AFIC contends that the claims against it should be dismissed because (1) "AFIC was not contractually obligated to cover any alleged diminution in fair market value"; (2) Anderson's allegations of diminution in value are insufficient; and (3) "Anderson failed to comply with the policy's 'Appraisal Clause' for determining the value of his loss." (Doc. 8-1 at 2).

### 1.  Whether the policy covers diminished value

AFIC contends that its policy does not cover diminished value, and thus AFIC did not breach its contractual duties when it did not assess or pay for diminished value to Anderson's home. (Doc. 8-1 at 5). Anderson argues that based on Georgia law, his policy "clearly covers diminished value above and beyond the cost to repair." (Doc. 10 at 8). Anderson primarily relies on two cases: *State Farm Mutual Automobile Insurance Company v. Mabry*, 274 Ga. 498, 556 S.E.2d 114 (2001), and *Royal Capital*

*Development, LLC v. Maryland Casualty Company*, 291 Ga. 262, 728 S.E.2d 234 (2012).

In *Mabry*, the Georgia Supreme Court addressed "whether Georgia law, as applied to the contract at issue, requires insurers to assess vehicles presented with first-party physical damages claims for diminution in value and, if found, pay it; and, if so, whether State Farm has sought to avoid that obligation."  274 Ga. at 499, 556 S.E.2d at 117.  The physical damage coverage in State Farm's policies provided that it would "pay for loss to your car" with a limitation of liability provision providing the insurer will pay the "lower of the actual cash value of the vehicle or the cost of repair or replacement."  *Id.* at 502, 556 S.E.2d at 118.  Reviewing 75 years of Georgia case law, the Georgia Supreme Court concluded that "Georgia … has been consistent in interpreting the physical damage coverage of automobile insurance policies to require that the insured be made whole, basing the measure of damages on the value of the vehicle."  *Id.* at 508, 556 S.E.2d at 122.  Thus, the Georgia Supreme Court held that "State Farm is obligated to pay for diminution in value when it occurs," noting that "what is lost when physical damage occurs is both utility and value," and that "[r]ecognition of diminution in value as an element of loss to be recovered on the same basis as other elements of loss merely reflects economic reality."  *Id.*  Further, the George Supreme Court held that the trial court correctly determined that State Farm was obligated to assess diminution in value "along with the elements of physical damage when a policyholder makes a general claim of loss."  *Id.* at 508-09, 556 S.E.2d at 122-23.

In *Royal Capital*, the Georgia Supreme Court held that *Mabry* is not limited to automobile insurance policies.  Specifically, the Georgia Supreme Court answered this certified question from the Eleventh Circuit: Does "an insurance contract providing

coverage for 'direct physical loss of or damage to' a building" require compensation "for the diminution in value of the property resulting from stigma due to its having been physically damaged?" *Royal Capital*, 291 Ga. at 262, 728 S.E.2d at 235.  The Georgia Supreme Court answered the question in the affirmative, holding that *Mabry* "is not limited by the type of property insured, but rather speaks generally to the measure of damages an insurer is obligated to pay." *Id.* at 263, 728 S.E.2d at 235.  The Georgia Supreme Court reiterated the "long-standing contract interpretation rule in Georgia" that it followed in *Mabry*: "[W]here '[an] insurance policy, drafted by the insurer, promises to pay for the insured's loss; what is lost when physical damage occurs is both utility and value; therefore, the insurer's obligation to pay for the loss includes paying for any lost value.'" *Id.* at 267, 728 S.E.2d at 238 (second alteration in original) (quoting *Mabry*, 274 Ga. at 508, 556 S.E.2d at 122).

AFIC argues that its policy differs from the policies in *Royal Capital* and *Mabry* because it provides "that 'direct physical loss' is limited to the cost of repairing or replacing the damage." (Doc. 8-1 at 6).  Specifically, AFIC contends that pursuant to the loss settlement provision in the policy, Anderson "is entitled to only … 'the amount [he] actually and necessarily spent to repair or replace the damaged portion of the property'" because he repaired the property himself.  (*Id.* at 8, 27).  In other words, Anderson is limited to recovery of "actual repair costs," and thus he cannot recover any diminished value, which AFIC appears to contend is a "hypothetical market effect[] of having ever experienced water damage upon the later sale of the home at some indeterminate time in the future."  (*Id.* at 6, 8).

But AFIC's argument is belied by *Royal Capital* and *Mabry*.  As discussed, the Georgia Supreme Court in *Royal Capital* specifically said that under an insurance policy

"providing coverage for '*direct physical loss* of or damage to' a building that allows the insurer … [to] pay[] either 'the cost of repairing the building' or 'the loss of value,'" the insurer "must … compensate the insured for the diminution in value of the property resulting from stigma" if the insurer chooses to repair the building.  *Royal Capital*, 291 Ga. at 262, 728 S.E.2d at 235 (emphasis added).  Here, there is no meaningful difference between the coverage provision in the policy in *Royal Capital* and AFIC's coverage provision, nor is there a coverage exclusion for diminished value in AFIC's policy.[2]  And even though Anderson chose to repair his home,[3] the fact that the loss settlement provision in Anderson's policy provides that AFIC will pay for the actual repair costs does not abrogate AFIC's obligation to compensate for any diminished value resulting from stigma.  *See id.* at 264, 728 S.E.2d at 236 ("[A] limitation of liability provision affording the insurer an option to repair serves only to abate, not eliminate, the insurer's liability for the difference between pre-loss value and post-loss value." (quoting

---

[2] In its reply brief, AFIC attempts to distinguish the specific language in Anderson's policy by arguing that diminution in value is not a "sudden," "direct," or "physical" loss.  (Doc. 11 at 4-5).  Specifically, AFIC contends that the possibility of obtaining a lower sale price in the future is not a "sudden" or "direct" loss but a consequential one, and "diminished value associated with the stigma of prior water damage" is not a "physical" loss.  (*Id.*).  But AFIC makes no compelling argument that diminution in value is not a "sudden," or an unexpected, loss.  *See Claussen v. Aetna Cas. & Sur. Co.*, 259 Ga. 333, 335, 337, 380 S.E.2d 686, 688, 690 (1989) (recognizing the various interpretations of the word "sudden" in contracts and construing "sudden" in the insured's favor to mean "unexpected and unintended.").  There is a distinction between hypothetical future *consequences* from diminution in value to property and the actual diminution in value that may result from damage to property.  And given the Georgia Supreme Court's decisions discussed above, the Court disagrees diminution in value is an indirect, consequential loss as opposed to a "direct" and "physical" one.  *See NUCO Invs., Inc. v. Hartford Fire Ins. Co.*, 2005 WL 3307089, at *4 (N.D. Ga.) (rejecting the argument diminution in value is a consequential loss and emphasizing the Georgia Supreme Court's conclusion in *Mabry* that both utility and value are lost "when physical damage occurs" and thus, the insurer is "obligat[ed] to pay … for any lost value" (internal quotation marks and citation omitted)).  As discussed, the Georgia Supreme Court in *Royal Capital*, in analyzing a policy covering "direct physical loss," clearly affirmed that diminution in value is an element of loss.  291 Ga. at 265, 728 S.E.2d at 236.

[3] AFIC argues that Anderson chose to repair the property, but AFIC never says why this makes a difference.  It doesn't.  If the insurer's obligation to repair includes an obligation to pay diminished value, then it makes no difference that the insured chose to avail himself of that policy benefit.  *NUCO Invs., Inc.*, 2005 WL 3307089, at *4 ("The fact that the insured rather than the insurer may exercise the election of how the damaged property will be valued does not change the interpretation of what is included in a 'loss.'").

*Mabry*, 274 Ga. at 506, 556 S.E.2d at 121)). Indeed, the Georgia Supreme Court in *Mabry* reiterated that repair means "restoration of the [property] to substantially the same condition and *value* as existed before the damage occurred." 274 Ga. at 505, 556 S.E.2d at 121 (emphasis added) (internal quotation marks and citation omitted). Although Anderson may not realize the full *consequences* of that diminution in value until he sells his home, his home nevertheless allegedly experienced a diminution in value as a result of the water damage. Accordingly, AFIC's motion to dismiss on this ground is denied.

### 2. Whether Anderson has sufficiently alleged diminished value

AFIC alternatively argues that Anderson has failed to state a claim because his allegations of diminished value are conclusory. (Doc. 8-1 at 8). The Court disagrees. Anderson alleges that his home suffered water damage; AFIC authorized repairs; and despite these repairs, the fair market value of his home diminished because of the water damage. (Doc. 1 ¶¶ 37-38). These allegations, taken as true with all reasonable inferences drawn in Anderson's favor, are sufficient to withstand a motion to dismiss.

### 3. Whether compliance with the appraisal clause was required to file suit

AFIC also alternatively argues that Anderson's claims must be dismissed because he did not comply with the policy's appraisal clause which it contends was a prerequisite to filing suit. (Doc. 8-1 at 10). The Georgia Court of Appeals has stated that a "disagreement … over coverage … is not a proper basis for an appraisal." *Lam v. Allstate Indem. Co.*, 327 Ga. App. 151, 154, 755 S.E.2d 544, 546 (2014). The Georgia Supreme Court has also held that "an appraisal clause can only resolve a disputed issue of value. It cannot be invoked to resolve broader issues of liability." *McGowan v.*

*Progressive Preferred Ins. Co.*, 281 Ga. 169, 172, 637 S.E.2d 27, 29 (2006) ("To invoke an appraisal clause to eliminate the larger issues of liability … would be impermissible, as it would expand the scope of the appraisal clause beyond the issue of value."). Here, the issue is clearly over coverage.  Indeed, this is highlighted in AFIC's own motion in which it argues that it "did not breach the policy … [because] the policy, on its face, does not cover diminution in market value" and that "Mr. Anderson cannot ask this Court to provide coverage to which the parties never agreed."  (Doc. 8-1 at 4, 8). Because the issue here is clearly the scope of coverage, AFIC's argument is without merit.

Accordingly, AFIC's motion to dismiss on the grounds asserted is denied.

**C.    AmFam Mutual**

In its initial brief, AmFam Mutual argued only that it "was not a party to the policy and had no contractual obligations to [Anderson]."  (Doc. 8-1 at 5).  Because AmFam Mutual's brief addresses only Anderson's privity of contract theory, Anderson argues that AmFam Mutual has not "seriously contested" the other facts and theories he alleges to support his claims against AmFam Mutual.  Nevertheless, Anderson's brief addresses the factual and legal bases for these theories.  Even though AmFam Mutual should have addressed those issues in its initial brief, it is clear that Anderson had ample opportunity to brief all issues.

**1.    Privity of contract**

Anderson contends AmFam Mutual is a proper Defendant because he has sufficiently alleged privity of contract.  (Doc. 10 at 20-21).  "The doctrine of privity of contract requires that only parties to a contract may bring suit to enforce it."  *Scott v. Cushman & Wakefield of Ga., Inc.*, 249 Ga. App. 264, 265, 547 S.E.2d 794, 796 (2001).

Further, under Georgia law, "[i]t is a fundamental principle … that 'each corporation is a separate entity, distinct and apart from its stockholders,'" and "[i]t is also fundamental that '[a] person who is not a party to a contract (i.e., is not named in the contract and has not executed it) is not bound by its terms.'" *Plaza Props., Ltd. v. Prime Bus. Invs., Inc.*, 240 Ga. App. 639, 642, 524 S.E.2d 306, 309 (1999) (fourth alteration in original) (footnotes and citations omitted).

Here, Anderson concedes that "AmFam Mutual is not listed on the declarations page of [his] policy," and it is clear from the policy itself that AFIC and Anderson are the only parties to it. (Docs. 8-1 at 15; 10 at 20). Rather, Anderson's sole allegation is that "correspondence … indicates that [his] homeowners policy was with AmFam Mutual"[4] and that "AmFam Mutual was involved in the adjustment of [his] claim." (Docs. 1 ¶ 18; 8-1 at 15; 11 at 8). However, this correspondence does not retroactively make AmFam Mutual a party to the contract. AmFam Mutual "is not named in the contract," and there is no allegation that AmFam Mutual "executed it." *Plaza*, 240 Ga. App. at 642, 524 S.E.2d at 309. Accordingly, Anderson has failed to sufficiently allege privity of contract.

### 2. Alter ego

Anderson contends AmFam Mutual is liable for AFIC's alleged breach of contract on an alter ego theory. "Under the alter ego doctrine, equitable principles are used to disregard the separate and distinct legal existence possessed by a corporation where it is established that the corporation served as a mere alter ego or business conduit of another." *Kissun v. Humana, Inc.*, 267 Ga. 419, 419-20, 479 S.E.2d 751, 752 (1997). "[G]reat caution should be exercised by the court," however. *Amason v. Whitehead*, 186 Ga. App. 320, 321, 367 S.E.2d 107, 108 (1988).

---

[4] The Court notes that AmFam Mutual contends this correspondence (Doc. 10-1 at 3) mistakenly references it instead of AFIC (Doc. 11 at 8), and in any event, it appears the correspondence was written over eight months after the effective date of the policy.

> In order to disregard the corporate entity because a corporation is a mere alter ego or business conduit of a person, it should have been used as a subterfuge so that to observe it would work an injustice.  To prevail based upon this theory it is necessary to show that the shareholders disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist.  The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility.

*Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289-90, 612 S.E.2d 296, 299 (2005) (citation omitted).  Accordingly, Georgia courts disregard the corporate form if: (1) the corporation is a "mere instrumentality" of the parent company or the shareholders, and (2) to observe the corporate form would "work an injustice."  *See Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1328 (N.D. Ga. 2014); *Fla. Shade Tobacco Growers, Inc. v. Duncan*, 150 Ga. App. 34, 34, 256 S.E.2d 644, 644 (1979).

However, as an equitable doctrine, piercing the corporate veil to hold a parent company or shareholder liable "is appropriate[ ] … only in the absence of adequate remedies at law."  *Baillie Lumber Co.*, 279 Ga. at 290, 612 S.E.2d at 299.  Thus, the Georgia Supreme Court has held it is required, "as a precondition to a plaintiff's piercing the corporate veil and holding individual shareholders liable on a corporate claim, that there be insolvency on the part of the corporation in the sense that there are insufficient corporate assets to satisfy the plaintiff's claim."  *Johnson v. Lipton*, 254 Ga. 326, 327, 328 S.E.2d 533, 535 (1985).  Absent an allegation of insolvency or insufficient assets to satisfy a claim, a plaintiff fails to state a claim for piercing the corporate veil to hold a parent company or shareholder liable.  *See B & F Sys., Inc. v. LeBlanc*, 2011 WL 4103576, at *34 (M.D. Ga.); *Friedman's, Inc. v. Morgan Schiff & Co. (In re Friedman's)*,

385 B.R. 381, 414-15 (S.D. Ga. 2008), *vacated in part by* 396 B.R. 623 (S.D. Ga. 2008);

*Adams v. Unum Life Ins. Co. of Am.*, 508 F. Supp. 2d 1302, 1315 (N.D. Ga. 2007);

*Perry v. Unum Life Ins. Co. of Am.*, 353 F. Supp. 2d 1237, 1240 (N.D. Ga. 2005).

There is no allegation AFIC is insolvent or that it has insufficient assets to satisfy Anderson's claims.  It may be that as Anderson investigates his claims, Anderson can allege facts to support his alter ego theory.  But the allegations Anderson now makes are insufficient.

### 3.  Actual or Apparent Agency

The existence of a parent/subsidiary relationship does not in and of itself establish an agency relationship under Georgia law.  *Matson v. Noble Inv. Grp., LLC*, 288 Ga. App. 650, 659, 655 S.E.2d 275, 282 (2007).  "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf."  O.C.G.A. § 10-6-1.

> To prove actual agency, the purported principal must have assumed the right to control the method, manner, and time of the purported agent's work, as distinguished from the right merely to require certain definite results in conformity to the contract.  The right to control the purported agent's time means the right to control the hours of work.  The right to control the method and manner of work means the right to tell the purported agent how to perform all details of the job, including the tools he should use and the procedures he should follow.

*Satisfaction & Serv. Hous., Inc. v. SouthTrust Bank, Inc.*, 283 Ga. App. 711, 713, 642 S.E.2d 364, 365 (2007) (internal quotation marks and footnotes omitted).

Though Anderson alleges AFIC and AmFam Mutual market and underwrite AmFam insurance policies, he alleges no facts regarding the level of control that AmFam Mutual exerts over AFIC in this regard.  There are also no allegations about any express agency agreement or other facts to suggest AFIC was AmFam Mutual's agent, beyond a conclusory allegation that "at all relevant times herein, Defendants

acted in all respects as agent, apparent agent, and alter ego for each other, with respect
to the acts complained of herein." (Doc. 1 ¶ 21).  Therefore, Anderson has not
sufficiently alleged an actual agency relationship between AFIC and AmFam Mutual.

AFIC also asserts a theory of apparent agency in his complaint.  (*Id.*).

> In order to recover under a theory of apparent or ostensible agency, a
> plaintiff must establish three elements: (1) that the alleged principal held
> out another as its agent; (2) that the plaintiff justifiably relied on the care or
> skill of the alleged agent based upon the alleged principal's
> representation; and (3) that this justifiable reliance led to the injury.

*Bright v. Sandstone Hospitality, LLC*, 327 Ga. App. 157, 158, 755 S.E.2d 899, 902
(2014) (citation omitted).

There are no allegations that *AmFam Mutual* represented to Anderson that it held
AFIC out as its agent.  *See Kids R Kids Int'l, Inc., v. Cope*, 330 Ga. App. 891, 895, 769
S.E.2d 616, 619 (2015) ("To establish the required elements of apparent agency, it is
not enough that the plaintiff *believe* that an agency relationship exists.  Neither is it
sufficient that the *agent* represent his status as agent.  It must be established that the
*principal* held out the agent as its agent." (internal quotation marks and footnote
omitted)).  Anderson only alleges that they "operate and trade under the common name
of AmFam as part of the American Family Insurance Group[,] use the same logo to
identify and promote their business," "maintain a common website," and underwrite
AmFam's homeowners insurance.  (Doc. 1 ¶¶ 15-17).  However, the Georgia Court of
Appeals has held that mere use of logos or trademarks is insufficient to show apparent
agency.  *See Kids R Kids Int'l, Inc.*, 330 Ga. App at 895, 769 S.E.2d at 619.  Further,
the fact that AFIC and AmFam Mutual share a website or the fact that "AmFam's …
homeowners insurance[ ] are underwritten by AmFam Mutual and [AFIC]" likewise does
not show that AmFam Mutual held AFIC out as its agent.  (Doc. 1 ¶¶ 16-17).

Even if these allegations were sufficient to show AmFam Mutual held AFIC out as its agent, they do not plausibly suggest Anderson "justifiably relied on the care or skill of the alleged agent based upon the alleged principal's representation." *Bright*, 327 Ga. App. at 158, 755 S.E.2d at 902.

### 4. Joint venture

Finally, Anderson seeks to hold AmFam Mutual liable on the theory that it was part of a joint venture with AFIC.

> The theory of joint venturers arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control (provided the arrangement does not establish a partnership), so as to render all joint venturers liable for the negligence of the other.

*Kissun*, 267 Ga. at 420, 479 S.E.2d at 752. Anderson has not alleged each Defendant exercises mutual control over any joint undertaking, and no other allegations in the complaint suggest mutual control. *See Williams v. Chick-fil-A, Inc.*, 274 Ga. App. 169, 170, 617 S.E.2d 153, 155 (2005) ("The right to exercise mutual control is a crucial part of a joint venture.").

### 5. Juridical link doctrine

Anderson alternatively argues that AmFam Mutual is a proper Defendant pursuant to the "juridical link" doctrine. (Doc. 10 at 21). Anderson, upon information and belief, thinks that AmFam Mutual issues homeowners insurance policies which he thinks may have language similar to AFIC's policy, and he believes AFIC and AmFam Mutual may have "engaged in a common course of conduct with respect to those policies in terms of their failure to assess for and, where found, pay diminished value to their insureds." (Doc. 1 ¶ 20). Consequently, he argues, "[a]t the very least, members

of the class who were issued policies directly underwritten by AmFam Mutual will have *standing* against AmFam Mutual." (Doc. 10 at 22) (emphasis added).

The juridical link doctrine derives from the Ninth Circuit's decision in *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973), where the court, in the context of a class action, explained in dicta:

> [A] plaintiff who has no cause of action against the defendant cannot fairly and adequately protect the interests of those who do have such causes of action. This is true even though the plaintiff may have suffered an identical injury at the hands of a party other than the defendant and even though his attorney is excellent in every material respect. Obviously this position does not embrace situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury. *Nor is it intended to apply in instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious*.

*Id.* at 466 (emphasis added). Anderson appears to rely on the language emphasized.[5] Specifically, AmFam Mutual, he thinks, has a similar policy which it interprets in the same way AFIC interprets its policy, and thus it would be expeditious to join the two in one action.

The Eleventh Circuit has not adopted the juridical link doctrine, but it has noted that cases applying the doctrine involved situations "in which there was either a contractual obligation among all defendants or a state or local statute requiring common action by the defendants." *Moore v. Comfed Savs. Bank*, 908 F.2d 834, 838 (11th Cir. 1990). Citing *Moore* and other cases, the Seventh Circuit has noted that "[p]ost-*La Mar* cases from other courts have suggested that if all the defendants took part in a similar scheme that was sustained either by a contract or conspiracy, or was mandated by a uniform state rule, it is appropriate to join as defendants even parties with whom the

---

[5] It seems obvious that in a properly alleged "conspiracy or concerted schemes between the defendants at whose hands the class suffered injury," there is no need to resort to some exotic doctrine to sue those defendants. Clearly, if they acted together to cause the class an injury, they can be sued together.

*named* class representative did not have direct contact." *Payton v. Cty. of Kane*, 308
F.3d 673, 679 (7th Cir. 2002) (citations omitted).  Anderson does not allege any
contract, rule, or statute requiring common action among insurers issuing homeowners
policies.

Moreover, as expeditious as it may be to join in one action AmFam Mutual and
all other insurance companies[6] who take the position that their policy does not provide
coverage for diminished value, expediency does not trump Article III's standing
requirement.  *See Raines v. Byrd*, 521 U.S. 811, 820 (1997) ("[W]e must put aside the
natural urge to proceed directly to the merits of this important dispute and to 'settle' it for
the sake of convenience and efficiency [when considering standing]."); *Lewis v. Casey*,
518 U.S. 343, 357 (1996) ("That a suit may be a class action ... adds nothing to the
question of standing, for even named plaintiffs who represent a class 'must allege and
show that they personally have been injured, not that injury has been suffered by other,
unidentified members of the class to which they belong and which they purport to
represent.'" (alteration in original) (citations omitted)).  Whatever utility the juridical link
doctrine may have in the context of Rule 23 class action analysis, this Court is not
prepared to say that it relieves Anderson from pleading that he suffered injury at the
hands of AmFam Mutual.  *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62-63 (2d Cir.
2012) (rejecting the plaintiff's juridical link doctrine arguments and affirming the district
court's conclusion that the plaintiff "lack[ed] Article III standing to sue the [other wholly-
owned subsidiaries of the same parent company as the codefendant] whether or not
they are juridically linked to [the codefendant] because she suffered no injury as a result
of their conduct"); *Cassese v. Wash. Mut., Inc.*, 262 F.R.D. 179, 184 (E.D.N.Y. 2009)

---

[6] If AmFam Mutual can be joined simply because it interprets its policies to not provide coverage for
diminished value, it would seem all insurers who deny claims for diminished value could be joined.  Again,
that would be expeditious, but it hardly comports with well-settled jurisdictional principles.

(refusing to apply the juridical link doctrine and stating "even despite closely interconnected business entities, a class action plaintiff does not have standing to sue defendants for a breach of contract to which the plaintiff was not a party"); *Newport v. Dell, Inc.*, 2008 WL 4347017, at *3 (D. Ariz.) (noting the standing problem with the plaintiff's attempt to invoke the juridical link doctrine and concluding that the case, which involved a breach-of-contract claim against a party with whom the plaintiff had no contract, was not similar to "the limited types of cases in which courts have actually applied the juridical link doctrine"); *Popoola v. Md-Individual Practice Ass'n, Inc.*, 230 F.R.D. 424, 431-32 (D. Md. 2005) (rejecting the juridical link doctrine where the plaintiff asserted the defendants had a juridical link because they were "common subsidiaries of the same corporation and because they share common practices and policies" and concluding the plaintiff lacked standing to sue the defendant that was purportedly linked through the doctrine). Therefore, AmFam Mutual is not a proper Defendant pursuant to this doctrine.

Accordingly, AmFam Mutual's motion to dismiss it as a Defendant is granted.

### III.    CONCLUSION

For the foregoing reasons, AFIC and AmFam Mutual's motion to dismiss is **GRANTED in part and DENIED in part**. (Doc. 8). The claims against AFIC will go forward. The claims against AmFam Mutual are **DISMISSED without prejudice**, and thus, AmFam Mutual is **DISMISSED** from this action.

**SO ORDERED**, this 29th day of June, 2016.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT